IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANE P. MASON,              )
                           )
             Plaintiff    )     Civil No. 07-639-HU
                           )
           v.           )     FINDINGS AND
                           )     RECOMMENDATION
                           )
MICHAEL J. ASTRUE,       )
Commissioner of Social Security,  )
                           )
           Defendant.   )

GEORGE J. WALL
1336 E. Burnside Street
Portland, OR 97214

      Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITTANA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

DAPHNE BANAY
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

      Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Diane Mason ("Mason") seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c).

For the following reasons, I recommend the Commissioner's decision be REVERSED and REMANDED for further proceedings.

## PROCEDURAL BACKGROUND

Born September 30, 1954, Mason completed a general equivalency degree in 1982.  Tr. 167, 190.[1]  Between 1989 and November 2005 Mason worked as a waitress, receptionist, file clerk, and salesperson.  Tr. 185, 711.

Mason applied for DIB on November 8, 2001, alleging disability since January 2, 2002.  Tr. 15, 167-69, 709.[2]  Mason alleges disability due to fibromyalgia, arthritis, depression, anxiety, attention deficit hyperactivity disorder ("ADHD"), migraines, and tumors.  Tr. 184.  The Commissioner denied Mason's application initially and upon reconsideration.  Hearings were held before an Administrative Law Judge ("ALJ") in 2003 and 2004, and the ALJ found Mason not disabled.  Tr. 15.  The Appeals Council subsequently remanded the matter for cross-examination of the vocational expert.  *Id.*  The Commissioner also accepted additional medical evidence into the record and a final hearing was held on October 25, 2006.  Tr. 705-737.

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #11).

[2]Mason's original application alleged disability on March 1, 2001, but Mason amended this date at her October 2006 hearing.  Tr. 167, 709.

On October 27, 2006, the ALJ issued a decision finding Mason not disabled prior to March 1, 2004, but disabled on and after that date. Tr. 26. The Appeals Council accepted additional evidence into the record, but denied Mason's request for reconsideration and the ALJ's decision became final on March 23, 2007. Tr. 6-9.

## MEDICAL BACKGROUND

Mason's medical record before this court begins in 1998, when nurse practitioner Kay Fleskes reviewed Mason's previous medical records, noting a history of post-traumatic stress disorder, ADHD, cervical injury, arthritis, and depression with suicidal ideation. Tr. 550, 552. Fleskes also assessed gout. Tr. 550. Between 1999 and December 2003 Fleskes assessed dysmenorrhea, polymennorhea, obesity, left shoulder pain, and osteoarthritis. Tr. 360, 516, 523. Fleskes also noted Mason's complaints of headaches, as well as neck, back, and shoulder pain. Tr. 449, 460, 478-88, 504.

Mason established care with rheumatologist Dr. Coyle in April 2001. Tr. 371. Dr. Coyle initial clinical impression noted "chronic progressive diffuse polyarthralgias, polymyalgias and parathesias with some premenstrual worsening" and "other chronic pain syndromes including chronic migraine headache and chronic anxiety disorder." Tr. 369. Dr. Coyle continued to diagnose fibromylagia and also consider a spondyloarthropathy[3] diagnosis in September and December 2001, noting Mason's positive response to eleven of eighteen fibromyalgia trigger points. Tr. 362, 364, 458.

In February 2002 Fleskes noted Mason's chronic radicular lower back pain, though an MRI at this time showed no evidence of cervical, thoracic, or lumbar disc herniation or impingement. Tr.

[3]Spondyloarthropathies are diseases of the joints and spine. Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

3 - FINDINGS AND RECOMMENDATION

449, 551.  Examining orthopedist Dr. Berselli reported that examination in June 2002 revealed diffuse posterior tenderness and a fifty-percent limitation in motion of the cervical and lumbar spine in all directions.  Tr. 430.  Dr. Berselli's neurologic assessment found sciatic notch tenderness on the right, but not left, with an unremarkable motor and sensory exam.  *Id.*  In December 2003 neurosurgeon Dr. Wayson found Mason's "diffuse and varied complaints" unrelated to limited cervical spine pathology.  Tr. 561.

Rheumatologist Dr. Daoud assumed Mason's care from Dr. Colye in September 2002.  Tr. 574.  Between September 2002 and September 2003 Dr. Daoud assessed osteoarthritis of the neck and back, "fibromyalgia syndrome with a lot of diffuse pain as well," possible bursitis with bony enlargement near the left quadriceps insertion, and ankle pain resulting from ankle surgery.  Tr. 567-70, 572, 575.  In January 2004 Dr. Daoud wrote that Mason's fibromyalgia syndrome was "significantly worse recently; I do think that perhaps a narcotic may be appropriate for her at low doses."  Tr. 566.

The medical record closes in January 2004, though Mason stated at her October 2006 hearing that Fleskes continued to provide her with primary care treatment at that time.  Tr. 719.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.  If she is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the

4 - FINDINGS AND RECOMMENDATION

twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment medically meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). This evaluation includes assessment of the claimant's statements regarding her impairments. 20 C.F.R. § 404.1545(a)(3). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration

the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the

Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g).

Mason challenges the ALJ's evaluation of the medical evidence and his finding that she could

perform work in the national economy between January 2, 2002, and March 1, 2004.

## THE ALJ'S FINDINGS

The ALJ found Mason's degenerative disc disease of the lumbar and cervical spine,

degenerative joint disease of the knee, fibromyalgia, and neuropathy "severe" at step two in the

sequential proceedings. Tr. 18. At step three, the ALJ found that Mason's impairments did not

medically meet or equal a listed impairment. Tr. 20. The ALJ assessed Mason's RFC:

> [T]he claimant has the residual functional capacity to perform
> sedentary exertion work activity. She is able to lift a maximum of 10
> pounds. She requires an option to sit and stand at will. She is limited
> to activities that do not involve climbing of ropes, ladders, and
> scaffolds. She should perform no more than occasional climbing,
> stooping, crouching, and overhead reaching. She should avoid
> hazards (i.e. machinery and heights). She is able to perform simple
> routine repetitive work that involves no more than occasional
> interaction with the public.

Tr. 21. At step four, the ALJ found that, because Mason was more than six months younger than age

fifty, this RFC allowed her to perform work in the national economy as a circuit board assembler or

optical goods assembler. Tr. 25. However, the ALJ found that after March 1, 2004, Mason was an

"individual closely approaching advanced age" and therefore disabled under the Medical-Vocational

Guidelines. Tr. 25. The ALJ therefore found Mason not disabled prior to March 1, 2004, and

disabled on and after that date. Tr. 26.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied

proper legal standards and the findings are supported by substantial evidence in the record.  42

U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193

(9th Cir. 2004).  This court must weigh the evidence that supports and detracts from the ALJ's

conclusion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th 2007)(citing *Reddick v. Chater*, 157

F.3d 715, 720 (9th Cir. 1998)).  The reviewing court may not substitute its judgment for that of the

Commissioner.  *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir.

2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*, *see*

*also Batson*, 359 F.3d at 1193.

## DISCUSSION

Mason claims the ALJ erroneously found that she may work on a "regular and continuing

basis."  Mason specifically contends that the ALJ inappropriately evaluated the opinions of two

treating physicians, a nurse practitioner, and the testimony of Maria Pakrant, a lay witness.  Mason

does not challenge the ALJ's evaluation of her own testimony.

I.     **Medical Source Statements**

A.     **Standard: Medical Opinions**

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that

of an examining physician, and in turn give greater weight to an examining physician's opinion than

that of a reviewing physician.  *Lester v. Chater*, 81 F.3d 921, 830 (9th Cir. 1995).  The ALJ must give

specific, legitimate reasons supported by substantial evidence for rejecting a controverted opinion

of a treating or examining physician and "clear and convincing reasons" for rejecting an

uncontroverted opinion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  This evaluation

may set out a detailed and thorough summary of the facts and conflicting clinical evidence. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The opinion of a physician, however, is not necessarily conclusive to the ultimate issue of disability, which is reserved for the Commissioner. 20 C.F.R. § 404.1527(c)(1).

### B.      Medical Expert Dr. DeBolt

Mason contends the ALJ accorded inappropriate weight to the opinion of medical expert Dr. DeBolt.

### a.      Standard: Medical Expert Testimony

"The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence" justifying rejection of a treating or examining physician's opinion. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999). A medical expert's opinion may not constitute such substantial evidence unless it is supported by other evidence of the record and consistent with that evidence. *Lester*, 81 F.3d at 831, *Morgan*, 169 F.3d at 600 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). This court must determine whether the ALJ's reliance upon the medical expert's testimony constitutes substantial evidence.

### b.      Discussion

Neurologist Dr. DeBolt testified at Mason's April 2004 hearings and submitted written responses to the ALJ's interrogatories on May 27, 2004. Tr. 15, 675-678, supp. tr. 767-777.[4] At Mason's April 2004 hearing Dr. DeBolt stated that Mason's medical record showed "no objective findings for fibromyalgia" and that physicians did not identify control points in their assessments.

---

[4]Citations "Supp. tr." refer to indicated pages in the supplemental transcript of the administrative record filed by the Commissioner December 10, 2007 (Docket #12).

Supp. tr. 769-70.

Dr. DeBolt's May 2004 questionnaire responses again referenced Mason's fibromyalgia diagnosis, but did not cite other rheumatological findings noted by Drs. Coyle and Daoud throughout the period during which they treated Mason. Tr. 675. Here Dr. DeBolt again stated that Mason's fibromyalgia did not meet or equal a listing because Dr. Colye noted positive control point responses and objective findings are not associated with the condition. *Id.* Dr. DeBolt finally stated that medical evidence does not support Mason's allegation of fibromyalgia. Tr. 677.

The record shows that treating rheumatologist Dr. Coyle diagnosed Mason with "primary versus secondary" fibromyalgia between April 2001 and February 2002. Tr. 360-71. Dr. Daoud assumed care of Mason from Dr. Coyle in September 2002. Tr. 574. Dr. Daoud continued to diagnose fibromyalgia between September 2002 and January 2004. Tr. 566-70, 572, 575.

In her initial April 2001 intake examination Dr. Coyle noted, "The patient certainly has a component of fibromyalgia with some overlap somatization disorder with positive fibromyalgia tender points as well as control points . . . ." Tr. 368. On October 15, 2004, Dr. Dauod wrote a letter to the record stating that, as a board-certified rheumatologist, she was unaware of required "control points" for fibromyalgia diagnosis. She stated that fibromyalgia tender points "are not defined as control points and it is not clear to me how this term was arrived at." Tr. 698.

 The ALJ gave Dr. DeBolt's opinion "significant weight" because "his opinions are consistent with the medical evidence of record." Tr. 23. The ALJ subsequently gave "little weight" to the opinions of DDS reviewing physicians and treating physician Dr. Coyle and "very little weight" to treating physician Dr. Daoud. Tr. 23-24. The ALJ repeatedly explained that each of these opinions were entitled to less weight than Dr. DeBolt's because  "additional evidence" received into the record

at the "hearing levels" undermines their opinions.  Tr 23-24.  The ALJ does not identify this "additional evidence," or specify which hearing he refers to, but the record shows that medical evidence accepted into the record between Mason's first hearing in October 2003 and her final hearing in April 2004 consists of Dr. DeBolt's testimony and further chart notes and correspondence from Dr. Daoud.  Tr. 272-94, 673-82, 683-699.  Dr. Daoud's October 2004 opinion directly contradicts and refutes Dr. DeBolt's testimony regarding fibromyalgia diagnosis and use of control points.  Tr. 698.

The ALJ is correct in noting that a medical expert's opinion may constitute substantial evidence if it is consistent with other medical evidence of record.  *Morgan*, 602 F.3d at 600. *Lester*, 81 F.3d at 831.  Dr. DeBolt's April 2004 hearing testimony is based upon Dr. Coyle's clinical findings.  Supp. tr. 768.  Dr. DeBolt's testimony also cited neurosurgeon Dr. Wayson's findings of tenderness unrelated to fibromyalgia and orthopedist Dr. Fulcrum's examination showing diffuse tenderness which did not correspond with fibromyalgia tender points.  *Id.*  The ALJ's reliance upon Dr. DeBolt's testimony is therefore appropriate because Dr. DeBolt's testimony is consistent with other medical evidence in the record.  The ALJ may properly choose one treating physician over another, especially when supported by a reviewing doctor and other evidence in the record. This reasoning should be affirmed.

## C.    Nurse Practitioner Fleskes

Mason also contends that the ALJ erroneously rejected the opinion of Nurse Practitioner Fleskes.  Pl.'s Opening Br. 6.  The ALJ gave Fleskes' opinion "very little weight."  Tr. 18.

The ALJ did not explicitly discuss Fleskes' clinical notes or treatment records.  The ALJ noted Mason's history of "diffuse body pain as well as neck and back pain," and stated, "records from

10 - FINDINGS AND RECOMMENDATION

the treating nurse practitioner, Kay Fleskes, dated from May 2002 through December 2003, showed

no significant changes in her condition and treatment records remained routine and conservative."

Tr. 18.  This cursory assessment does not reflect Fleskes' treatment of Mason between November

1998 and December 2003, which occupies approximately half of the medical record before the ALJ.

Tr. 449-560, 577-645.

The ALJ also stated that, because nurse practitioners are not acceptable medical sources,

Fleskes' opinion carries little weight.  *Id.*  The ALJ was correct in noting that nurse practitioners are

not "acceptable medical sources."  20 C.F.R. § 404.1513(d).  However, nurse practitioners remain

"other medical sources" which may "show the severity of your impairment and how it affects your

ability to work."  *Id.*  The Commissioner has issued specific instruction for evaluation of such

sources:

> [D]epending on the particular facts in a case, and after applying the
> factors for weighing opinion evidence, an opinion from a medical
> source who is not an "acceptable medical source" may outweigh the
> opinion of an "acceptable medical source". . . For example, it may be
> appropriate to give more weight to the opinion of a medical source
> who is not an "acceptable medical source" if he or she has seen the
> individual more often than the treating source and has provided better
> supporting evidence and a better explanation for his or her opinion.

SSR 06-3p at *5 (available at 2006 WL 2329939).    However, "other medical sources cannot

establish the existence of a medically determinable impairment."  *Id.* at *2.

The ALJ was therefore not obliged to accept Fleskes' diagnoses, but he should have

considered Fleskes' clinical impressions and observations.  Here,  Fleskes' chart notes are detailed

and reflect considerable care in assessing and treating Mason. These  notes are consistent with the

opinions of treating rheumatologists Drs. Coyle and Daoud.These two doctors differ slightly, and

this difference was a focus of the ALJ's decision to rely on Dr. DeBolt, the reviewing doctor.  For

11 - FINDINGS AND RECOMMENDATION

this reason, the ALJ's review of Fleskes' clinical records should not be sustained. These records merit more than the cursory attention given them by the ALJ.

In summary, the ALJ's citation to Dr. DeBolt's testimony should be affirmed, but the ALJ's analysis of Fleskes' clinical observations should not be sustained. When Fleskes' records are properly evaluated, the ALJ may decide to accept Dr. DeBolt or Dr. Daoud; that remains to be seen.

## II.    Lay Witness Testimony

### A.    Standard: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.   20 C.F.R. §§ 404.1513(d), 404.1545(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).   Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment, but he may reject lay testimony inconsistent with the medical evidence.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Lewis*, 236 F.3d at 512.

### B.    Discussion

Mason presently states that Drs. Coyle and Daoud suggest that she requires "occasional days of rest, at unpredictable intervals," and infers that lay witness testimony submitted by Maria Pakrant supports this claim.  Pl.'s Opening Br. 5.

The ALJ noted Pakrant's submission without discussion and stated, "I have found the lay testimony to be of limited use in the evaluation of the claimant's residual functional capacity.  There is more reliable evidence of record from examining medical professionals who are trained to evaluate impairments and their impact on functional capacity."  Tr. 23.

This analysis does not consider Pakrant's observations and does not provide a germane reason

for dismissing Pakrant's testimony.  The Commissioner asks this court to infer that the ALJ rejected Pakrant's testimony because it is inconsistent with the medical record.  Def.'s Br. 13-14.  However, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout v. Barnhart*, 454 F.3d 1050, 1054 (9th Cir. 2005) (citing *Dodrill*, 12 F.3d at 919).  Furthermore, the Commissioner does not establish that Pakrant's observations regarding Mason's daily activities are inconsistent with Mason's medical record.  This court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Id.* (quoting *Pinto v. Massinari*, 249 F.3d 840, 847 (9th Cir. 2001)).  For these reasons, the ALJ's cursory analysis of the lay testimony should not be sustained.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (quoting *Smolen*, 80 F.3d at 1292).  The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision.  *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill*, 12 F.3d at 919).

Here, the ALJ erroneously assessed the opinions of Fleskes and inappropriately rejected

13 - FINDINGS AND RECOMMENDATION

Pakrant's lay testimony. However, crediting the erroneously rejected evidence does not establish disability prior to March 1, 2004. While the vocational expert affirmed that two or more absences per month would preclude competitive employment (tr. 735), the rejected testimony does not establish that Mason would experience such absenteeism for the required twelve-month durational period. Furthermore, because counsel did not ask the vocational expert to assess the effect of further restrictions upon Mason's ability to perform work activity, this court cannot determine if a more restrictive RFC assessment precludes work in the national economy at step five.

In such instances, award of benefits is inappropriate. *Harman*, 211 F.3d at 1180. The matter must be remanded for further proceedings addressing the improperly discredited evidence presented by lay witness Pakrant and nurse practitioner Fleskes. *Id.* The ALJ will also consider additional evidence submitted to the Appeals Council. The ALJ must then revise his RFC analysis, if necessary, and apply the correct medical-vocational guideline or obtain additional vocational expert testimony regarding Mason's workplace limitations. Finally, the ALJ must make adequate step four and five findings incorporating the indicated testimony.

## RECOMMENDATION

The Commissioner's decision that Mason is not entitled to benefits under Title II of the Social Security Act is not based upon correct legal standards or supported by substantial evidence. I recommend the Commissioner's decision be reversed and remanded for further proceedings consistent with these findings and recommendation.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 9, 2008. If no objections are filed, review of the

14 - FINDINGS AND RECOMMENDATION

Findings and Recommendation will go under advisement on that date.

      If objections are filed, a response to the objections is due September 23, 2008, and the review of the Findings and Recommendation will go under advisement with the District Judge on that date.

      IT IS SO ORDERED.

      DATED this 22nd day of August, 2008.

**/s/ Dennis James Hubel**
Dennis James Hubel
United States Magistrate Judge

15 - FINDINGS AND RECOMMENDATION